# In the United States Court of Federal Claims

No. 16-830C

Filed: October 21, 2019

| | |
|---|---|
| CHRIS BELL, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | Subject-Matter Jurisdiction; RCFC |
| ) | 12(b)(1); Failure To State A Claim; RCFC |
| v. ) | 12(b)(6); Summary Judgment; RCFC 56; |
| ) | Relocation Incentive Pay; 5 U.S.C. § |
| THE UNITED STATES, ) | 5753; 5 C.F.R. § 575, Subpart B; RCFC |
| ) | 9(k). |
| Defendant. ) | |
| ) | |

*Lawrence Berger*, Counsel of Record, Mahon & Berger, Esqs., Glen Cove, NY, for plaintiffs.

*Jessica R. Toplin*, Trial Attorney, *Reginald T. Blades, Jr.*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, *Joseph H. Hunt*, Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC; *Kasia M. Preneta*, Of Counsel, Drug Enforcement Administration, Springfield, VA, for defendant.

## MEMORANDUM OPINION AND ORDER

GRIGGSBY, Judge

## I.      INTRODUCTION

Plaintiffs, current and former employees of the United States Drug Enforcement Administration ("DEA"), bring this action against the United States alleging that they are owed relocation incentive pay for each year that they worked for the DEA in Puerto Rico. The government has filed a partial motion to dismiss, or, alternatively, for summary judgment, seeking to dismiss Count I of the complaint for lack of subject-matter jurisdiction and to dismiss Count II of the complaint with respect to 37 plaintiffs, pursuant to Rules 12(b)(1), 12(b)(6) and 56 of the Rules of the United States Court of Federal Claims ("RCFC"). *See generally* Def. Mot.

For the reasons set forth below, the Court: (1) **GRANTS** the government's partial motion to dismiss, or, alternatively, for summary judgment; (2) **DISMISSES** Count I of the complaint; (3) **DISMISSES** Count II of the complaint with respect to the following plaintiffs:

Brian Bonifant; Andre Clark; Terry Davis; Wendy Davis; Carmen DeSheplo; Kermit Diaz; Eric Friedman; Jesus Gamez; George Greco; Darren Krawczyk; Joseph Shepherd; and Chris York; and (4) **ENTERS SUMMARY JUDGMENT** in favor of the government with respect to Count II of the complaint with respect to the following plaintiffs:  Chris Bell; Arlyn Brunet; Philip Centrone; Michael Cole; Meliton Cordero; Christopher Diaz; David Flores; Brendan Hanratty; Gabriel Hill; George Horton; Phillip Jones; Dave Joseph; Robert Kennedy; Matthew Kruse; Gregory Krywy; Michael Miranda; Samarl Parks; Francisco Perez; David Pina; Laila Rico; Michael Serra; Michael Silveira; Jason Staab-Peters; Chanelle Wallace; and John Walter.

## II.      FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.      Factual Background

Plaintiffs are current and former employees of the DEA.  *See generally* Compl.  Plaintiffs allege that they are owed unpaid relocation incentive pay pursuant to the Office of Personnel Management's ("OPM") relocation incentive statute, the statute's implementing regulations, the Department of Justice's ("DOJ") relocation incentive plan and certain written service agreements that plaintiffs have entered into with the DEA.  *See generally* Compl.  Specifically, plaintiffs allege in Count I of the complaint that they are entitled to relocation incentive pay for each year that they worked for the DEA in Puerto Rico pursuant to 5 U.S.C. § 5753 and 5 C.F.R. § 575, Subpart B.  *Id.* at ¶¶ 5-13.  In Count II of the complaint, plaintiffs allege that they are entitled to such pay pursuant to certain written service agreements that they entered into with the DEA.  *Id.* at ¶¶ 14-16.  As relief, plaintiffs seek to recover monetary damages from the government in the amount of the relocation incentive pay allegedly due for each year of their service.  *Id.* at 3.

---

[1] The facts recited in this Memorandum Opinion and Order are taken from the complaint ("Compl."); the government's partial motion to dismiss, or alternatively motion for summary judgment ("Def. Mot."); the Appendix attached thereto ("Def. App'x."); and plaintiff's response and opposition to the government's motion to dismiss, or alternatively, motion for summary judgment ("Pl. Resp.").  Except where otherwise noted, all facts recited herein are undisputed.  The complaint does not specify the time period during which plaintiffs seek to recover unpaid relocation incentive pay.  *See generally* Compl.  The Court construes the complaint to seek unpaid relocation incentive pay for the identified plaintiffs during the period July 10, 2016, to the present.  *See* 28 U.S.C. § 2501.

1.      **The Relocation Incentive Pay Statue And Implementing Regulations**

Pursuant to 5 U.S.C. § 5753(b), the OPM may authorize the head of an agency to pay a relocation incentive to an individual who relocates to accept a position that would be difficult to fill absent such pay.  5 U.S.C. § 5753(b).  Section 5753 requires that "the employee [enter] into a written service agreement to complete a period of employment with the agency, not longer than 4 years."  5 U.S.C. § 5753(c)(1).

The OPM has also promulgated regulations governing the payment of relocation incentives for federal employees.  *See generally* 5 C.F.R. §§ 575.201, *et seq*.  Specifically, 5 C.F.R. § 201 provides that:

> This subpart contains regulations implementing 5 U.S.C. [§] 5753, which authorizes payment of relocation incentives.  An agency may pay a relocation incentive to a current employee who must relocate to accept a position in a different geographic area under the conditions specified in this subpart provided the agency determines that the position is likely to be difficult to fill in the absence of an incentive.

5 C.F.R. § 575.201.  To determine the amount of the relocation incentive and the method of payment, the regulations specify that:

> (a) An authorized agency official must establish the criteria for determining the amount of a relocation incentive.  An agency may pay a relocation incentive—
>
> > (1) As an initial lump-sum payment at the commencement of the service period required by the service agreement;
> > (2) In installments throughout the service period required by the service agreement;
> > (3) As a final lump-sum payment upon the completion of the full service period required by the service agreement; or
> > (4) In a combination of these payment methods.

5 C.F.R. § 575.209(a).  These regulations also provide that:

> [T]he total amount of relocation incentive payments paid to an employee in a service period may not exceed 25 percent of the annual rate of basic pay of the employee at the beginning of the service period multiplied by the number of years (including fractions of a year) in the service period (not to exceed 4 years).

5 C.F.R. § 575.209(b)(1).

## 2.      The DOJ Relocation Incentive Plan And DEA Policy

The Department of Justice has established a relocation incentive plan for the payment of a relocation incentive to employees of the department, including the DEA (the "DOJ Relocation Incentive Plan").  *See generally* Pl. Ex. A; *see also* HR Order DOJ1200.1:  Part 2; Compensation:  Chapter 2-5 (REV), Department of Justice Interim Relocation Incentive Plan, available at https://www.justice.gov/jmd/hr-order-doj12001-part-2-compensation-14.  The DOJ Relocation Incentive Plan provides that such pay may be "up to 25 percent of the employee's basic pay . . . at the beginning of the service period, multiplied by the length of his/her service agreement."  Pl. Ex. A at 2.

The DEA has also issued a manual that sets forth the requirements for recruitment, relocation and retention incentive pay (the "DEA Manual").  *See* Def. App'x at 1-13.  The DEA Manual provides that "[t]he payment of relocation incentives is discretionary."  *Id.* at 5.  The DEA Manual also provides that "[n]o applicant or employee is entitled to a relocation incentive." *Id.*

In addition, the DEA Manual provides that the employee must sign a service agreement to receive relocation incentive pay.  *Id.* at 7.  In this regard, the DEA Manual defines a "service agreement" as:

> A signed, written agreement between the DEA and an employee under which the employee agrees to a specified period of employment of not more than four years at the new duty station to which relocated in return for payment of a relocation incentive.

*Id.* at 6.

Lastly, the DEA Administrator has also issued several memoranda related to relocation incentive pay.  On April 11, 1997, the DEA Administrator issued a memorandum approving relocation incentive pay for vacant positions located in Puerto Rico "in an amount up to 25 percent of base pay (exclusive of locality, availability, or other pay enhancements) and cannot exceed $15,000" (the "1997 Memorandum").  *Id.* at 14-17.  On August 1, 2008, the DEA Acting Administrator approved another memorandum that modified the relocation incentive program in Puerto Rico to allow for relocation incentive pay "in amounts up to 25 percent of the employee's basic pay for three years service in Puerto Rico" (the "2008 Memorandum").  *Id.* at 20.  In

addition, on May 13, 2015, the DEA Administrator approved a memorandum that allowed "the use of the relocation incentive to be a one-time payment of 25 percent of basic pay for employees who sign a service agreement for a minimum three (3) year tour" in Puerto Rico (the "2015 Memorandum"). *Id.* at 22-24.

## B.    Procedural History

On July 13, 2016, plaintiffs filed the complaint in this matter. *See generally* Compl. On March 6, 2017, the Court stayed the case at the parties' request, so that the parties could engage in settlement discussions. *See generally* Order, dated March 6, 2017.

After the Court lifted the stay of proceedings, the government filed a partial motion to dismiss, or, alternatively, for summary judgment, on December 21, 2018. *See generally* Def. Mot. On April 17, 2019, plaintiffs filed a response and opposition to the government's motion. *See generally* Pl. Resp. On May 20, 2019, the government filed a reply in support of its motion. *See generally* Def. Reply.

This matter having been fully briefed, the Court resolves the pending motion.

## III.   LEGAL STANDARDS

## A.    RCFC 12(b)(1) And Jurisdiction

When deciding a motion to dismiss upon the ground that the Court does not possess subject-matter jurisdiction pursuant to RCFC 12(b)(1), this Court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); RCFC 12(b)(1). But, plaintiffs bear the burden of establishing subject-matter jurisdiction and they must do so by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). Should the Court determine that "it lacks jurisdiction over the subject matter, it must dismiss the claim." *Matthews v. United States*, 72 Fed. Cl. 274, 278 (2006).

In this regard, the United States Court of Federal Claims is a court of limited jurisdiction and "possess[es] only that power authorized by Constitution and statute . . . ." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The Tucker Act grants the Court jurisdiction over:

[A]ny claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1).

The Tucker Act is, however, "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages. . . . [T]he Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398 (1976) (alterations in original).  And so, to pursue a substantive right against the United States under the Tucker Act, plaintiffs must identify and plead a money-mandating constitutional provision, statute, or regulation; an express or implied contract with the United States; or an illegal exaction of money by the United States. *Cabral v. United States*, 317 F. App'x 979, 981 (Fed. Cir. 2008) (citing *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005)); *see also Martinez v. United States*, 333 F.3d 1295, 1302 (Fed. Cir. 2003).

"[A] statute or regulation is money-mandating for jurisdictional purposes if it 'can fairly be interpreted as mandating compensation for damages sustained as a result of the breach of the duties [it] impose[s].'" *Fisher*, 402 F.3d at 1173 (quoting *United States v. Mitchell*, 463 U.S. 206, 217 (1983)).  To determine whether a statute is money-mandating, "[t]he Court starts, and usually ends, with the text of the laws or regulations that are in question." *Contreras v. United States*, 64 Fed. Cl. 583, 592 (2005).

In this regard, the Federal Circuit has held that a statute that provides for "solely discretionary payment of money does not give rise to a right to recover money damages from the United States." *Roberts v. United States*, 745 F.3d 1158, 1163 (Fed. Cir. 2014) (quoting *Adair v. United States*, 648 F.2d 1318, 1322 (Ct. Cl. 1981) (internal quotations omitted)).  And so, when a statute uses such discretionary language, "a very strong, but rebuttable, presumption arises that the [statute] is not money-mandating." *Contreras*, 64 Fed. Cl. at 593.

With regards to determining whether a statute is mandatory or discretionary, the Federal Circuit has also recognized that:

We may thus presume that when Congress used the word "may" in the statute in suit, we should use common sense and presume that the word

conveys some degree of discretion. But we must proceed to test that presumption against the intent of Congress and other inferences that we may rationally draw from the structure and purpose of the statute at hand.

*McBryde v. United States*, 299 F.3d 1357, 1362 (Fed. Cir. 2002). And so, to overcome the presumption of discretion and to convert a "may" to a "shall" in a particular statute, the Court may draw "*obvious inferences* from the structure and purpose of the statute." *Contreras*, 64 Fed. Cl. at 593 (citing *United States v. Rogers*, 461 U.S. 677, 706 (1983) (emphasis in original)).

### B.    RCFC 12(b)(6)

When deciding a motion to dismiss based upon failure to state a claim upon which relief can be granted pursuant to RCFC 12(b)(6), this Court similarly must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. *See Call Henry, Inc. v. United States*, 855 F.3d 1348, 1354 (Fed. Cir. 2017) (citing *Bell/Heery v. United States*, 739 F.3d 1324, 1330 (Fed. Cir. 2014). And so, to survive a motion to dismiss under RCFC 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When the complaint fails to "state a claim to relief that is plausible on its face," the Court must dismiss the complaint. *Iqbal*, 556 U.S. at 678 (citation omitted). On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity," and determine whether it is plausible, based upon these facts, to find against the defendant. *Id.* at 678-79 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

### C.    RCFC 56

Pursuant to RCFC 56, a party is entitled to summary judgment when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Biery v. United States*, 753 F.3d 1279, 1286 (Fed. Cir. 2014). A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. A fact is "material" if it could "affect the outcome of the suit under the governing law." *Id.* The moving party bears the burden of demonstrating the absence of any genuine issues of

material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). And so, "'the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654 (1962)).

In making a summary judgment determination, the Court does not weigh the evidence presented, but instead must "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *see also Am. Ins. Co. v. United States*, 62 Fed. Cl. 151, 154 (2004); *Agosto v. INS*, 436 U.S. 748 (1978) ("[A trial] court generally cannot grant summary judgment based on its assessment of the credibility of the evidence presented . . . .") (citations omitted). The Court may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. The above standard applies when the Court considers cross-motions for summary judgment. *Principal Life Ins. Co. & Subsidiaries v. United States*, 116 Fed. Cl. 82, 89 (2014); *see also Estate of Hevia v. Portrio Corp.*, 602 F.3d 34, 40 (1st Cir. 2010). And so, when both parties move for summary judgment, "'the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" *Abbey v. United States*, 99 Fed. Cl. 430, 436 (2011) (quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987)).

### D.    28 U.S.C. § 2501

Under title 28, United States Code, section 2501, "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such a claim first accrues." 28 U.S.C. § 2501. This statute of limitations is jurisdictional and not susceptible to equitable tolling. *Young v. United States*, 529 F.3d 1380, 1384 (Fed. Cir. 2008) (citation omitted); *see also John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133-34 (2008) (The Supreme Court "has long interpreted the court of claims limitations statute" as jurisdictional, setting forth a "more absolute, kind of limitations period" that does not permit equitable tolling.). The Federal Circuit has held that "[a] cause of action cognizable in a Tucker Act suit accrues as soon as all events have occurred that are necessary to enable the plaintiff to bring suit." *Martinez v. United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (citations omitted). And so, such a cause of action accrues "when 'all events have

occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money.'" *Id.* (quoting *Nager Elec. Co. v. United States*, 177 Ct. Cl. 234, 240 (1966)).

###### E.     Contracts With The United States And RCFC 9(k)

Lastly, this Court possesses subject-matter jurisdiction to consider breach of contract claims against the United States based upon an express or implied-in-fact contract.  28 U.S.C. § 1491(a)(1).  Plaintiffs bear the burden of proving the existence of a contract with the United States and they must demonstrate that there is "something more than a cloud of evidence that could be consistent with a contract to prove a contract and enforceable contract rights."  *D & N Bank v. United States*, 331 F.3d 1374, 1377 (Fed. Cir. 2003).

Plaintiffs must identify the substantive provisions of the contract on which they rely to pursue a breach of contract claim in this Court.  RCFC 9(k); *Kissi v. United States*, 102 Fed. Cl. 31, 35 (2011) (finding the court lacked jurisdiction due to plaintiff's failure to "adequately plead a contract claim under RCFC 9(k)").  This requirement is met when plaintiffs attach a copy of the contract—or a similar document—to the complaint or otherwise identify the provisions of the contract that have allegedly been breached.  *See Zainulabeddin v. United States*, 138 Fed. Cl. 492, 508 (2018) (citing *Garreaux v. United States*, 77 Fed. Cl. 726, 730 (2007)); *Baha v. United States*, 123 Fed. Cl. 1, 5 (2015) (finding a supplement to a contract, which lays out the terms of the parties' agreement, satisfies the pleading threshold of RCFC 9(k)).  And so, RCFC 9(k) ensures that the Court knows the relevant provisions of a contract to render a decision on a breach of contract claim.  *Id.*

#### IV.     LEGAL ANALYSIS

The government has filed a partial motion to dismiss, or, alternatively, for summary judgment upon the ground that the Court should dismiss Count I of the complaint because the statute and regulations upon which plaintiffs rely are not money mandating and do not require the payment of a relocation incentive for each year that plaintiffs worked in Puerto Rico.  Def. Mot. at 7-12.  The government also moves to dismiss Count II of the complaint, or for summary judgment in its favor, with regards to certain plaintiffs, because either:  (1) these plaintiffs have

received all of the relocation incentive pay to which they are entitled;[2] (2) the claims of these plaintiffs are time-barred; or (3) the subject plaintiffs have not identified a binding contract with the government. *Id.* at 13-32.

Plaintiffs counter in their response and opposition to the government's dispositive motion that the Court may consider their statutory and regulatory claims, because 5 U.S.C. § 5753 is money-mandating when read in combination with the statute's implementing regulations and the DOJ's Relocation Incentive Plan. Pl. Resp. at 5-10. Plaintiffs also contend that their breach of contract claims set forth in Count II of the complaint are not time-barred, because the doctrine of equitable tolling tolls the statute of limitations in this case. *Id.* at 14-15. And so, plaintiffs request that the Court deny the government's motion. *Id.* at 15.

For the reasons set forth below, a plain reading of Section 5753 and its implementing regulations make clear that these legal provisions are not money-mandating and cannot provide the basis for establishing jurisdiction in this case. The breach of contract claims asserted by certain plaintiffs in Count II of the compliant are also without merit, because either: (1) plaintiffs' breach of contract claims are time-barred; (2) these plaintiffs fail to identify a binding contract with the government; or (3) the undisputed material facts show that the subject plaintiffs have received all of the relocation incentive pay to which they are entitled. And so, the Court: (1) **GRANTS** the government's partial motion to dismiss, or, alternatively, for summary judgment; (2) **DISMISSES** Count I of the complaint; (3) **DISMISSES** Count II of the complaint with respect to the following plaintiffs: Brian Bonifant; Andre Clark; Terry Davis; Wendy Davis; Carmen DeSheplo; Kermit Diaz; Eric Friedman; Jesus Gamez; George Greco; Darren Krawczyk; Joseph Shepherd; and Chris York; and (4) **ENTERS SUMMARY JUDGMENT** in favor of the government with respect to Count II of the complaint with respect to the following plaintiffs: Chris Bell; Arlyn Brunet; Phillip Centrone; Michael Cole; Meliton Cordero; Christopher Diaz; David Flores; Brendan Hanratty; Gabriel Hill; George Horton; Philip Jones;

---

[2] This Court has recognized that "when matters outside the pleadings are presented and not excluded by the Court," a motion to dismiss under RCFC 12(b)(6) is to be converted to a motion for summary judgment. *See e.g.*, *Akins v. United States,* 82 Fed. Cl. 619, 622 (2008); RCFC 12(d). The government relies upon the written service agreements and leave and earnings statements of certain plaintiffs to support its argument that the Court should dismiss Count II because certain plaintiffs have received all of the relocation incentive pay to which they are entitled. Def. Mot. at 13-32. And so, the Court treats the government's motion as a motion for summary judgment with respect to this issue. *Id.*

Dave Joseph; Robert Kennedy; Matthew Kruse; Gregory Krywy; Michael Miranda; Samarl Parks; Francisco Perez; David Pina; Laila Rico; Michael Serra; Michael Silveira; Jason Staab-Peters; Chanelle Wallace; and John Walter.

### A.      The Court May Not Consider Plaintiffs' Statutory And Regulatory Claims

As an initial matter, the Court must dismiss Count I of the complaint for lack of subject-matter jurisdiction, because neither Section 5753 nor its implementing regulations are money-mandating.  RCFC 12(b)(1).  It is well-established that plaintiffs must identify and plead a money-mandating constitutional provision, statute, or regulation; an express or implied contract with the United States; or an illegal exaction of money by the United States, to pursue a claim against the United States under the Tucker Act.  *Cabral v. United States*, 317 F. App'x 979, 981 (Fed. Cir. 2008) (citing *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005)); *see also Martinez v. United States*, 333 F.3d 1295, 1302 (Fed. Cir. 2003).  To determine whether the statute and regulations upon which plaintiffs rely in this case are money-mandating, "[t]he Court starts, and usually ends, with the text of the laws or regulations that are in question."  *Contreras v. United States*, 64 Fed. Cl. 583, 592 (2005).

In Count I of the complaint, plaintiffs identify 5 U.S.C. § 5753 and 5 C.F.R. § 575, Subpart B to establish jurisdiction.  Compl. at ¶¶ 5-13.  And so, the threshold question that the Court must resolve is whether these legal provisions can be fairly interpreted to require the payment of money damages.  *Contreras v. United States*, 64 Fed. Cl. at 592.  For the reasons that follow, the answer to this question must be no.

First, a careful reading of Section 5753 makes clear that this statute is not money-mandating.  The Federal Circuit has held that a statute that provides for "solely discretionary payment of money does not give rise to a right to recover money damages from the United States."  *Roberts v. United States*, 745 F.3d 1158, 1163 (Fed. Cir. 2014) (quoting *Adair v. United States*, 648 F.2d 1318, 1322 (Ct. Cl. 1981) (internal quotations omitted)).  And so, this Court has held that when a statute uses discretionary language, "a very strong, but rebuttable, presumption arises that the [statute] is not money-mandating."  *Contreras*, 64 Fed. Cl. at 593.

Specifically relevant to this case, the Federal Circuit has also held that:

[W]hen Congress use[s] the word "may" in the statute in suit, we should use common  sense  and  presume  that  the  word  conveys  some  degree  of

> discretion.  But we must proceed to test that presumption against the intent
> of Congress and other inferences that we may rationally draw from the
> structure and purpose of the statute at hand.

*McBryde v. United States*, 299 F.3d 1357, 1362 (Fed. Cir. 2002).  Given this, a presumption

arises that a statute is discretionary when the word "may" is used within the text of the statute.

*Id.*; *see also Contreras*, 64 Fed. Cl. at 593.  To overcome such a presumption—and to convert a

"may" to a "shall"—the Court must find that the inferences drawn that Congress intended for a

statute not to be discretionary are obvious.  *Contreras*, 64 Fed. Cl. at 593 (citing *United States v.*

*Rogers*, 461 U.S. 677, 706 (1983)).

  The plain text of Section 5753 shows that Congress intended to give discretion to the

government regarding the payment of a relocation incentive.  This statute provides, in relevant

part, that "[t]he Office of Personnel Management *may* authorize the head of an agency to pay a

[recruitment or relocation] bonus under this section to an individual."  5 U.S.C. § 5753(b)

(emphasis supplied).  The use of the word "may" in Section 5753 strongly suggests that

Congress intended to give the OPM discretion regarding whether to authorize a government

agency to pay a relocation incentive.  *Contreras*, 64 Fed. Cl. at 592-93.  Section 5753 also

provides that payment of a relocation incentive is permissible "*only if* . . . the position to which

such individual is appointed . . . or to which such individual moves or must relocate . . . is likely

to be difficult to fill in the absence of such a bonus."  5 U.S.C. § 5753(b) (emphasis supplied).

This language similarly shows that Congress afforded discretion to government agencies to

determine whether the payment of a relocation incentive is warranted in a particular case.  *Id.*

And so, the Court reads the text of Section 5753 to support a very strong, but rebuttable,

presumption that Congress intended to give the DEA discretion regarding whether to pay the

relocation incentives at issue in this case.

  The regulations that implement Section 5753 are also discretionary.  The OPM's

relocation incentive pay regulations are found in 5 C.F.R. § 575, Subpart B.  Notably, 5 C.F.R. §

575.201 provides that an agency "*may* pay a relocation incentive."  5 C.F.R. § 575.201

(emphasis supplied).  Another relocation incentive pay regulation found at 5 C.F.R. § 575.209

similarly provides that "an agency *may* pay a relocation incentive."  5 C.F.R. § 575.209(a)

(emphasis supplied).  And so, again, the use of the word "may" in the aforementioned

regulations creates a very strong presumption that these regulations are discretionary and not money-mandating.[3]  *Contreras*, 64 Fed. Cl. at 593; *see also Roberts*, 745 F.3d at 1163.

Plaintiffs' argument that the strong presumption that the OPM's relocation incentive pay statute and regulations are discretionary can be overcome in this case is also not persuasive. *United States v. Rodgers*, 461 US 677, 706 (1983); *see also Contreras*, 64 Fed. Cl. at 593 ("while inferences may be used to convert 'may' to 'shall' through the interpretive process, these inferences are to be *obvious*.").  In their response and opposition to the government's motion, plaintiffs argue that the DOJ Relocation Incentive Plan renders Section 5753 and its implementing regulations money-mandating, because this plan requires that the DEA pay a relocation incentive during the entire period of time addressed in an employee's written service agreement.  Pl. Resp. at 6-7.  But, plaintiff's argument is belied by a plain reading of the DOJ Relocation Incentive Plan.

The DOJ Relocation Incentive Plan provides, in relevant part, that:

> Relocating employees *may* be paid amounts of up to 25 percent of the employee's basic pay . . . at the beginning of the service period, multiplied by the length of his/her service agreement, calculated as stated in 5 C.F.R. § 575.209.

Pl. Ex. A at 2 (emphasis supplied).  As discussed above, the use of the word "may" in the text of the DOJ Relocation Incentive Plan makes clear that the payment of a relocation incentive is discretionary and not mandatory.  Given this, plaintiffs' reliance upon the DOJ Relocation Incentive Plan to show that Section 5753 and its implementing regulations are money-mandating is misplaced.[4]

---

[3] The OPM's relocation incentive pay regulations and the DOJ Relocation Incentive Plan also provide that the total amount of relocation incentive payments paid to an employee may not exceed 25 percent of the employee's annual rate of basic pay, multiplied by the number of years in the service period.  5 C.F.R. § 575.209(b)(1); Pl. Ex. A at 2.  The Court reads this requirement to establish a maximum limit on the amount of relocation incentive pay, but not to mandate the payment of a specific amount of such pay.  *Id.*

[4] The DEA Manual also makes clear that Section 5753 and its implementing regulations are not money-mandating.  The DEA Manual provides that:

> [P]ayment of relocation incentives is discretionary.  No applicant or employee is entitled to a relocation incentive.

Def. App'x at 5.

Because the Court reads the text of Section 5753 and its implementing regulations to afford discretion to the government regarding the payment of a relocation incentive, the Court must dismiss plaintiffs' statutory and regulatory claims against the government for lack of subject-matter jurisdiction.  RCFC 12(b)(1).

### B.     The Court Must Dismiss The Breach Of Contract Claims Brought By Certain Plaintiffs

The government also persuasively argues that the Court should dismiss the breach of contract claims alleged in Count II of the complaint, with regards to certain plaintiffs, for two reasons.  Def. Mot. at 13-32.

### 1.     The Claims Of Certain Plaintiffs Are Untimely

First, there is no genuine dispute that the breach of contract claims brought by Andre Clark; Terry Davis; Wendy Davis; Jesus Gamez; Darren Krawczyk; and Joseph Shepherd are time-barred under 28 U.S.C. § 2501.  Pursuant to Section 2501, "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such a claim first accrues."  28 U.S.C. § 2501.  The Federal Circuit has held that a cause of action accrues "when 'all events have occurred to fix the [g]overnment's alleged liability, entitling the claimant to demand payment and sue here for his money.'" *Martinez v. United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (quoting *Nager Elec. Co. v. United States*, 177 Ct. Cl. 234, 240 (1966)).  And so, plaintiffs' breach of contract claims accrued in this case when they entered into their respective written service agreements with the DEA and they must bring such claims within six years of that date.

Plaintiffs filed the complaint in this matter on July 13, 2016.  *See generally* Compl. Given this, plaintiffs' breach of contract claims are untimely unless they entered into written service agreements with the DEA on or after July 13, 2010.  It is undisputed that Andre Clark; Terry Davis; Wendy Davis; Jesus Gamez; Darren Krawczyk; and Joseph Shepherd entered into written service agreements with the DEA before July 13, 2010.  Def. App'x at 35, 51, 54, 66, 88, 114; *see also* Pl. Resp. at 12-15 (not disputing the execution dates for these service agreements).[5]

---

[5] It is undisputed that Andre Clark entered into a service agreement with the DEA on April 21, 2008; Terry Davis entered into a service agreement with the DEA on November 16, 2009; Wendy Davis entered into a service agreement with the DEA on December 29, 2009; Jesus Gamez entered into a service agreement with the DEA on April 25, 2008; Darren Krawczyk entered into a service agreement with the

Because the breach of contract claims brought by all of these plaintiffs accrued prior to July 13, 2010, the Court must dismiss these claims as untimely.  RCFC 12(b)(1); 28 U.S.C. § 2501.

### 2.    Certain Plaintiffs Fail To Identify A Contract With The Government

The Court must also dismiss the breach of contract claims brought by Brian Bonifant; Carmen DeSheplo; Kermit Diaz; Eric Friedman; George Greco; and Chris York, because these plaintiffs have not identified a contract with the government upon which to base their claims.  It is well-established that to pursue a breach of contract action in this Court, plaintiffs must establish the existence of a contract with the government and plaintiffs must also identify the substantive provisions of the contract upon which they rely.  *D & N Bank v. United States*, 331 F.3d 1374, 1377 (Fed. Cir. 2003); RCFC 9(k); *see also Kissi v. United States*, 102 Fed. Cl. 31, 35 (2011).  Plaintiffs may satisfy the requirement to provide a description of the substantive provisions of the contract upon which they rely by annexing a copy of the alleged contract to the complaint.  RCFC 9(k); *see also Zainulabeddin v. United States*, 138 Fed. Cl. 492, 508 (2018).

None of the aforementioned plaintiffs have identified the substantive contractual provisions upon which they rely in the complaint.  *See generally* Compl.  Nor have these plaintiffs provided the Court with a copy of their alleged written service agreements with the DEA.  *See generally id.*; *see also* Pl. Resp. (not disputing that these plaintiffs did not provide written service agreements).  Given this, plaintiffs simply have not established that they have entered into contracts with the DEA to support their breach of contract claims.[6]  And so, the Court must also dismiss their breach of contract claims for want of subject-matter jurisdiction.  RCFC 12(b)(1); RCFC 9(k).

---

DEA on August 4, 2003; and Joseph Shepherd entered into a service agreement with the DEA on August 13, 2006.  Def. App'x at 35, 51, 54, 66, 88, 114.  Plaintiffs' argument that the doctrine of equitable tolling tolls the statute of limitations period in this case is also unavailing.  It is well-established that the Tucker Act's six-year statute of limitations requirement is not subject to equitable tolling.  Pl. Resp. at 14-15; *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133-34 (2008).

[6] The government represents that the DEA attempted to locate written service agreements for these plaintiffs without success.  Def. Reply at 8.

### C.    Certain Plaintiffs Have Received All Of The Pay
Provided For Under Their Written Service Agreements

Lastly, the undisputed material facts in this case show that plaintiffs Chris Bell; Arlyn Brunet; Philip Centrone; Michael Cole; Meliton Cordero; Christopher Diaz; David Flores; Brendan Hanratty; Gabriel Hill; George Horton; Phillip Jones; Dave Joseph; Robert Kennedy; Matthew Kruse; Gregory Krywy; Michael Miranda; Samarl Parks; Francisco Perez; David Pina; Laila Rico; Michael Serra; Michael Silveira; Jason Staab-Peters; Chanelle Wallace; and John Walter have received all of the relocation incentive pay to which they are entitled under the terms of their respective written service agreements with the DEA.  And so, the Court enters summary judgment in favor of the government with respect to the breach of contract claims brought by these plaintiffs.  RCFC 56.

The government has provided in the appendix to its dispositive motion copies of the aforementioned plaintiffs' written service agreements with the DEA and the leave and earning statements for each of these plaintiffs during the time period relevant to their breach of contract claims.  Def. App'x at 27, 31, 34, 43, 49, 60, 64, 71, 74, 77, 80, 83, 87, 92, 95, 98, 101, 104, 107, 110, 113, 118, 121, 124, 127.  These documents show that all of the aforementioned plaintiffs have been paid the amount of relocation incentive pay that is specified in their respective written service agreements.  *Id.* at 25, 29, 32, 41, 47, 58, 62, 69, 72, 75, 78, 81, 85, 90, 93, 96, 99, 102, 105, 108, 111, 116, 119, 122, 125; *see also* Def. Mot. at 13-32.  Plaintiffs neither dispute the accuracy of the information contained in the leave and earning statements provided to the Court, nor do plaintiffs contest that they have received the amount of relocation incentive pay specified in their respective written service agreements.  *See generally* Pl. Resp.  Given this, the Court agrees with the government that the undisputed material facts in this case show that these plaintiffs have received all of the relocation incentive pay to which they are entitled.  And so, the Court must deny their breach of contract claims against the government.[7]

---

[7] Plaintiffs' argument that the Court should not deny the breach of contract claim brought by Michael Silveira, because the DEA has acted in bad faith by altering Mr. Silveira's written service agreement, is also unsubstantiated.  Pl. Resp. at 13.  The government acknowledges that a version of Mr. Silveira's written service agreement—which is not signed by the DEA—contains a notation stating that his relocation incentive pay should be multiplied by three years of service.  Def. Reply at 7.  But, this notation does not appear on the version of the written service agreement that is signed by Mr. Silveira and the DEA.  *Id.*; Pl. Ex. B.  Given this, plaintiffs have not shown that the DEA acted in bad faith with

Because the undisputed material facts in this case show that the DEA has fulfilled its payment obligations under the terms of the written service agreements for the aforementioned plaintiffs, the Court **GRANTS** the government's motion for summary judgment with regards to the breach of contract claims brought by:  Chris Bell; Arlyn Brunet; Phillip Centrone; Michael Cole; Meliton Cordero; Christopher Diaz; David Flores; Brendan Hanratty; Gabriel Hill; George Horton; Philip Jones; Dave Joseph; Robert Kennedy; Matthew Kruse; Gregory Krywy; Michael Miranda; Samarl Parks; Francisco Perez; David Pina; Laila Rico; Michael Serra; Michael Silveira; Jason Staab-Peters; Chanelle Wallace; and John Walter in Count II of the complaint. RCFC 56.

## V.   CONCLUSION

In sum, plaintiffs have not shown that the Court possesses subject-matter jurisdiction to consider their statutory and regulatory claims for relocation incentive pay.  Certain plaintiffs also have not shown that the Court may consider their breach of contract claims, because these claims are either untimely, or plaintiffs fail to identify binding provisions of a contract with the government.  In addition, the undisputed material facts show that certain plaintiffs have received all of the relocation incentive pay to which they are entitled under their respective written service agreements with the DEA.

And so, for all of these reasons, the Court:

1.  **GRANTS** the government's partial motion to dismiss, or, alternatively, for summary judgment;

2.  **DISMISSES** Count I of the complaint;

3.  **DISMISSES** Count II of the complaint with respect to the following plaintiffs: Brian Bonifant; Andre Clark; Terry Davis; Wendy Davis; Carmen DeSheplo; Kermit Diaz; Eric Friedman; Jesus Gamez; George Greco; Darren Krawczyk; Joseph Shepherd; and Chris York;

4.  **ENTERS SUMMARY JUDGMENT** in favor of the government with respect to Count II of the complaint with respect to the following plaintiffs:  Chris Bell;

---

regards to the payment of Mr. Silveira's relocation incentive.  Pl. Resp. at 13-14; *see also Spezzaferro v. F.A.A.*, 807 F.2d 169, 173 (Fed. Cir. 1986).

Arlyn Brunet; Philip Centrone; Michael Cole; Meliton Cordero; Christopher Diaz; David Flores; Brendan Hanratty; Gabriel Hill; George Horton; Phillip Jones; Dave Joseph; Robert Kennedy; Matthew Kruse; Gregory Krywy; Michael Miranda; Samarl Parks; Francisco Perez; David Pina; Laila Rico; Michael Serra; Michael Silveira; Jason Staab-Peters; Chanelle Wallace; and John Walter; and

5. **DIRECTS** the parties to **FILE** a joint status report on or before **November 21, 2019**, stating their respective views regarding the schedule for further proceedings in this matter, including the schedule for the filing of the government's answer with respect to the remaining claims in this case.

Each party shall bear their own costs.

**IT IS SO ORDERED.**


s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
Judge